UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION: 16-00048-all |
| VERSUS | JUDGE DONALD E. WALTER |
| LOUIS ACKAL, et al | MAGISTRATE JUDGE HANNA |

**MEMORANDUM RULING AND ORDER**

Before the Court are two motions to change venue [Docs. ## 64, 77], filed by Defendants Louis Ackal (01) and Mark Frederick (03), respectively; a motion to continue trial [Doc. #78], filed by Defendant Frederick (03); and a motion to adopt all three of those motions [Doc. # 85], filed by Defendant Gerald Savoy (02). Defendant Ackal (01) is currently the elected sheriff of Iberia Parish, in south Louisiana, and has been since 2008. At all times relevant to the charging documents, all three defendants were employed by the Iberia Parish Sheriff's Office, which staffs the Iberia Parish Jail, under the supervision of Defendant Ackal (01). [*See* Doc. # 36]. Likewise, at all times relevant, the Iberia Parish Jail housed both state and federal pre-trial detainees and inmates convicted of state crimes. *Id.* The defendants are charged with various constitutional and civil rights violations, involving the use of force and violence against inmates and pre-trial detainees at the Iberia Parish Jail. *Id.*

Trial is set for October 31, 2016, in the Shreveport Division of the Western District of Louisiana. This date was selected after designating the case as complex, thereby justifying a trial setting outside of the parameters of the Speedy Trial Act.[1] Despite its complexity, the Court has

---

[1] *See* Doc. #54 (sealed), pp. 1-2.

1

been particularly cognizant of the public's interest in having this case tried as expeditiously as possible. Magistrate Judge Hanna stated, at the June 15, 2016 status conference: "this is not your ordinary run-of-the-mill case. It is probably one of the stronger public right-to-a-speedy-trial cases I've ever seen."[2] Of this finding there can be no doubt, as will be evidenced *infra*.

The instant motions were prompted by this Court's decision to set trial in Shreveport, pursuant to a *sua sponte* intradistrict transfer from the assigned division of Lafayette. [*See* Docs. ## 44, 45, 46, and 52]. In response to these two motions, the Government simply states that it "is prepared to try the case wherever the Court, in its discretion guided by the factors discussed in *United States v. Lipscomb*, 299 F.3d 303 (5th Cir. 2002), determines the trial should be held." [Doc. # 81, p. 1]. For the reasons explained in this ruling, the undersigned has carefully considered and applied Fifth Circuit precedent to the facts of this case, in deciding to maintain the Shreveport trial setting.

As the Fifth Circuit has recognized, there is "an important distinction between *intra*district and *inter*district transfers: Only an interdistrict transfer implicates the Constitution." *Lipscomb*, 299 F.3d at 339 (emphasis in original) (citing U.S. Const. art. 3, § 2, cl. 3; U.S. Const. amend. VI). The venue provision of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ." U.S. Const. amend. VI. "There is no basis for inferring the existence of a constitutional right to trial within the *division* where a criminal defendant lives or where a crime was committed." *Lipscomb*, 299 F.3d at 339 (emphasis in original) (citing *United States v. James*, 528 F.2d 999, 1021 (5th Cir. 1976)

---

[2] Doc. #56 (sealed), p. 15, ll 5-8.

(noting that the Sixth Amendment makes "no reference to a division within a judicial district")); *see also United States v. Faulkner*, 17 F.3d 745, 757 (5th Cir. 1994) (recognizing that "the place assigned for trial within a judicial district is not a matter of constitutional dimension.").

Federal Rule of Criminal Procedure 18 governs intradistrict transfers, as follows:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

Fed. R. Crim. P. 18. Importantly, Rule 18 was amended in 1966 to eliminate an earlier requirement that the trial take place in the district and division where the crime occurred. *See Lafoon v. United States*, 250 F.2d 958 (5th Cir. 1958) (citing the earlier version of Rule 18 and finding that the right to be tried in a particular division was "a personal and technical right which can be waived[]"); *see also In re Chesson*, 897 F.2d 156, 158-59 (5th Cir. 1990) (per curiam). However, "a district judge's exercise of discretion resulting in a trial in an environment alien to the accused over a proper objection *must be supported by a demonstration in the record that the judge gave due regard to the factors now incorporated in Rule 18.*" *United States v. Garza*, 593 F.3d 385, 390 (5th Cir. 2010) (quoting *United States v. Burns*, 662 F.2d 1378, 1383 (11th Cir. 1981)) (emphasis added). "Although the text of Rule 18 refers only to convenience and prompt administration, the district court may consider other factors." *Lipscomb*, 299 F.3d at 340 (citations omitted).

*Lipscomb* was a criminal bribery case, involving a former member of the Dallas city council, in which the district court had ordered an "unexpected," *sua sponte* intradistrict transfer, from Dallas to Amarillo, just three weeks before a long-scheduled trial setting. 299 F.3d at 337-38. Before the issuance of the order, relocating trial approximately three hundred miles from

3

Dallas, "no party had presented evidence regarding prejudice from pretrial publicity or regarding any other issue relative to venue." *Id.* at 338. After the transfer, the defense objected, and later renewed those objections in a motion for new trial following the conviction. Also after trial, the Government filed into the record some thirty-seven newspaper articles which had been published about the case in the nine months leading up to the transfer order, as well as other articles published after the transfer order. *Id.* Notably, none of that publicity was in the record when the transfer order issued, nor were those articles even mentioned by the district court. *Id.* On appeal, the Fifth Circuit evaluated several factors, before reversing the conviction and remanding for a new trial in a properly chosen venue. As explained below, this Court has undertaken a similar analysis.

At the outset, the Court notes, first, that this case is distinguishable from *Lipscomb* in that it is the Shreveport setting, rather than Lafayette, which has been long-scheduled. The current trial setting was announced at the defendants' initial appearances and arraignments on the superseding indictment, on June 15, 2016. [*See* Docs. ## 44, 45, 46, and 52]. At a status conference later that afternoon, Magistrate Judge Hanna again notified the parties of the Shreveport trial setting and acknowledged the presence of significant media attention surrounding this case.[3] Secondly, unlike in *Lipscomb*, all parties have had ample opportunity to brief the issues now before the Court.

In *Lipscomb*, the Fifth Circuit first considered Rule 18's "due regard to the convenience

---

[3] *See* Doc. #56 (sealed), p. 6, ll 5-10 ("As of now, Judge Walter has indicated . . . his intent to try the case in Shreveport. We had issues with some adverse statements made to the press last go-around. The courtroom was, as you all know, just totally packed."); p. 11, ll 3-14 (Magistrate Judge referencing his personal observations regarding adverse publicity surrounding this trial); and p. 16, ll 1-5 (discussing the presence of protesters and the effects of protestors making inaccurate statements to the media and "potentially taint[ing] the process").

4

of the defendant and the witnesses," and found that convenience militated strongly against transfer, as the defendant and all witnesses resided in Dallas. Furthermore, every defense attorney practiced in Dallas, and no relevant event occurred outside of Dallas. The district court had failed to mention these contra-transfer facts; however, the Fifth Circuit explicitly recognized "the basic truth that trial in Amarillo was inconvenient for [the defendant], his counsel, and all witnesses." *Id.* at 341. In that way, *Lipscomb* was distinguishable from cases relied upon by the district court, one of which included out of state defendants and several incarcerated witnesses, and the other for which transfer was ordered, without objection, to a courthouse only forty miles further from the place of the crime than was the original trial setting. *Id.* at 341 n. 183 (citing *James,* 528 F.2d at 1003, 1021–22; and *United States v. Bridges,* 551 F.2d 651, 652 & n. 5 (5th Cir.1977)).

Here, the criminal defense lawyers are all based in south Louisiana; however, only one of the three lead attorneys maintains a practice in Lafayette.[4] All relevant events occurred in Iberia Parish, within the Lafayette Division of the Western District of Louisiana, and it is likely that most witnesses are likewise located there. In addition, Defendant Frederick (03) urges the Court to consider his health concerns, financial status, and care-taking responsibilities for a minor daughter. [*See* Doc. # 77-1, pp. 2-3].[5] Defendant Savoy (02) stresses the hardships that would befall each defendant, based on the inconvenience and costs of accommodations, and the office

---

[4] Lead attorney for Louis Ackal (01), John McClindon, practices in Baton Rouge, which is approximately 60 miles from Lafayette. Lead attorney for Gerald Savoy (02), Randal McCann, practices in Lafayette. And, lead attorney for Mark Frederick (03), Frank Granger, practices in Lake Charles, which is approximately 75 miles from Lafayette. Shreveport is just over 200 miles from Lafayette.

[5] Defendant Frederick has suffered from both colon and brain cancer, both of which are currently in remission, and has a permanent colostomy bag. He also develops painful abdominal abscesses and sees his physicians "almost weekly." [Doc. # 77-1, pp. 2-3]. In view of his current health, it is possible that his case may be severed from the October setting.

and logistical hardships on the lawyers in trying to manage trial from a hotel room. [Doc. # 85]. In fact, the parties' objections to the transfer are entirely rooted in these financial and convenience-related concerns. In response to the office hardship arguments, the Court will make conference rooms available to out-of-town counsel and will impose upon the Government to assist in defraying witness costs, to the extent same is requested by defense counsel. The Court notes that, whether tried in Lafayette or Shreveport, this trial will cause inconvenience to both the defendants and witnesses. *See Chesson*, 897 F.2d at 158. That said, the Court acknowledges that convenience militates in favor of a Lafayette trial setting but finds that other unique factors nonetheless tip the scales in favor of the Shreveport transfer.

In *Lipscomb*, the second factor referenced was court policy, based on the district court's reference to a prior transfer of "about 100 [criminal] cases" from Wichita Falls to Dallas. 299 F.3d at 341. The Fifth Circuit quickly dismissed this "historical fact" as being unsupportive of the transfer at issue, noting that such a "reference to the court's prior venue practice verges on circularity and runs the risk of creating a *per se* rule that violates Rule 18's focus on the facts of each case." *Id*. Although Defendant Savoy (02) points out past practices of other Western District judges (which should include the undersigned) traveling from their respective divisions to Lafayette for trials,[6] the Court finds such historical facts to be similarly irrelevant to the specific facts of this case. After acknowledging the irrelevance of local court policy, the Fifth Circuit turned its attention to determining "whether any other legitimate factors, discernible from the record as it stood when the order was made, sufficiently supported transfer to bring this one within the range of discretionary choices to which [it] must defer on appeal." *Id*. Those factors

---

[6] Doc. # 85, p. 3.

included speedy trial, docket management, logistics, and pretrial publicity.

Rule 18's directive to give "'due regard to ... the prompt administration of justice' is in part a literal command that trials comply with the Speedy Trial Act." 299 F.3d at 341 (citing 18 U.S.C. §3161). In finding that this factor did not support a trial transfer in *Lipscomb*, the Fifth Circuit noted and dismissed the district court's characterization of "possibility of a difficult voir dire as an obstacle to 'prompt administration.'" *Id.* at 342. The Fifth Circuit explained that "the triggering purpose of the 'prompt administration' amendment to Rule 18 was to clarify that district courts are authorized to fix the place of trial so as to comply with the Speedy Trial Act. That Act concerns itself solely with the timeliness of when trial *begins*, not with when either voir dire or the entire trial will *conclude*, and in this circuit, trial is deemed to begin with voir dire." *Id.* (citations omitted). That said, "[w]illingness of a defendant to waive Speedy Trial Act rights does not alter a court's duty to consider the prompt administration of justice as a factor." *Chesson*, 897 F.2d at 159 (internal quotations and citation omitted).

Here, the speedy trial factor is neutral, pursuant to *Lipscomb*'s articulation of the "prompt administration" of this case "in the textual, speedy-trial sense." *Id.* The Court set trial for October 31, 2016, shortly after the June 9, 2016 return of the superseding indictment. At a status conference on June 15, 2016, then-counsel for lead Defendant Ackal (01) declared that he would not personally try this case before 2017, to which both the Government and the other defense counsel responded that they would not object to a continuance. [*See* Doc. # 54]. Despite the lack of objection, the Court has remained steadfast in its intention to maintain the trial setting, given that, as acknowledged by the Government, the public has a particularly strong interest in a speedy trial, as will be discussed more fully below. *See Zedner v. United States*, 547 U.S. 489, 500-01 (2006). *Beginning* voir dire on October 31, 2016 will not present a problem, regardless of

7

whether trial is held in Shreveport or Lafayette.

Nonetheless, *Lipscomb* made clear that, in the context of docket management, the term "prompt administration of justice" is construed to refer not just to the particular case that may be transferred, but also to other trials on the court's docket. 299 F.3d at 342 (citing *Chesson*, 897 F.2d at 159). "A district court may consider docket management in its Rule 18 balancing, and docket issues may even outweigh convenience factors that point entirely the other way." *Id.* at 342 (citing *Chesson*, 897 F.2d at 157–59; and *United States v. Harris*, 25 F.3d 1275, 1277–78 (5th Cir. 1994)). While not a particularly weighty factor in this analysis, it is certainly more conducive to this Court's own docket management that trial be held in Shreveport.

*Lipscomb* next considered logistics, including courtroom availability, security needs, and the amount of jail space available for potential defendants and witnesses, as permissible considerations. 299 F.3d at 343. As mentioned above, courtroom availability is not relevant in this case, and although courthouse security in its usual sense is not relevant, security concerns may be present as a uniquely relevant factor. The Iberia Parish community has been heavily impacted by the allegations referenced in the charging documents in this case. The criminal behavior alleged herein is related to nine other guilty pleas by former employees and law enforcement officers, all based on rights violations involving the Iberia Parish Sheriff's Office, under the supervision of Defendant Ackal (01).[7] The parish seat of Iberia Parish is the city of New Iberia, which eliminated its own police force in 2004. Since then, the Iberia Parish Sheriff's

---

[7] *See* W. D. La., Lafayette Division, Criminal Docket Nos.: *USA v. Wade Bergeron*, 6:16-cr-00032-DEW-CBW-1; *USA v. Robert Burns*, 6:16-cr-00033-DEW-CBW-1; *USA v. Wesley Hayes*, 6:16-cr-00034-DEW-CBW-1; *USA v. Byron Benjamin Lassalle*, 6:16-cr-00035-DEW-CBW-1; *USA v. Bret Broussard*, 6:16-cr-00036-DEW-CBW-1; *USA v. Jesse Hayes*, 6:16-cr-00037-DEW-CBW-1; *USA v. David Hines*, 6:16-cr-00044-DEW-CBW-1; *USA v. Jason Comeaux*, 6:16-cr-00045-DEW-CBW-1; and *USA v. Jeremy Hatley*, 6:16-cr-00064-DEW-PJH-1.

Office has been the only source of law enforcement in New Iberia.[8] As a result of the instant case and the nine related guilty pleas, New Iberia has been effectively stripped of its police force, causing the city to request additional law enforcement services from the State of Louisiana, in order to ensure the safety of New Iberia's citizens.[9] As discussed below, Defendant Ackal (01) has been portrayed in pretrial publicity as a generally polarizing figure, against whom a recall petition has been circulated.[10] Both his and the other defendants' safety, as well as the safety and welfare of the public, are weighed in the Court's analysis as uniquely concerning factors. Indeed one may, in this case, consider the safety of the prosecutors, *see* footnote 14, *infra*.

Regarding the amount of jail space available for potential witnesses, the Court's best estimate, at this time, is that there may be approximately six (6) to ten (10) incarcerated witnesses. The Iberia Parish Jail is no longer available to house federal prisoners, and generally, jail space in and around the Lafayette courthouse is of some concern for the United States Marshal Service.

And, finally, *Lipscomb* considered the relevance of pretrial publicity, which is of significant relevance in this case and ultimately counterbalances the convenience concerns discussed above. As the Fifth Circuit has recognized, it has "not delineated the quality or

---

[8] *See City of New Iberia v. New Iberia Fire & Police Civil Serv. Bd.*, 2004-1496 (La. App. 3 Cir. 3/2/05), 896 So. 2d 328, 329, *writ denied*, 2005-0801 (La. 5/13/05), 902 So. 2d 1023; *Wood v. Fontenot*, 2004-1174 (La. App. 3 Cir. 3/2/05), 896 So. 2d 323, 324, *writ denied sub nom. City of New Iberia v. New Iberia Fire & Police Civil Serv. Bd.*, 2005-0801 (La. 5/13/05), 902 So. 2d 1023; *see also* attachment, http://klfy.com/2016/03/10/doj-indicted-iberia-parish-sheriff-louis-ackal-with-civil-rights-violations/ (local news coverage, from KLFY News 10, dated March 10, 2016, discussing the instant case and describing New Iberia as being under the "sole protection of the sheriff's office").

[9] *See* attachment, May 24, 2016, KATC article, (http://www.katc.com/story/32055920/new-iberia-mayor-explains-why-city-is-bringing-in-state-troopers).

[10] *See* attachment, June 30, 2016, KLFY article, (http://klfy.com/2016/06/30/residents-fed-up-petition-to-recall-sheriff-louis-ackal/).

quantity of prejudicial publicity that will support a *trial court's sua sponte* transfer in the face of countervailing convenience factors." 299 F.3d at 343 (emphasis in original). *Lipscomb* noted that the Fifth Circuit has, "however, defined the opposite end of the zone of deference for *inter*district transfers: When pretrial publicity is the basis for a *defendant's* motion to transfer to another district under Rule 21, a trial court errs as a matter of law in denying such a motion only if the defendant can show that pretrial publicity inflamed the jury pool, pervasively prejudiced the community against the defendant, probatively incriminated the defendant, or exceeded 'the sensationalism inherent in the crime.'" *Id.* (quoting *United States v. Parker*, 877 F.2d 327, 331 (5th Cir. 1989)). Likewise, in cases where a defendant appeals the denial of an *intra*district transfer, the Fifth Circuit has found that such a transfer is not *required* absent a "strong showing of prejudice." *United States v. Gourley*, 168 F.3d 165, 171 (5th Cir. 1999) (citing *United States v. Duncan*, 919 F.2d 981, 985 (5th Cir. 1990)).

In contrast to the *Lipscomb* transfer order, in which the pretrial publicity was neither referenced therein nor attached thereto, this Court has carefully tracked and considered the publicity surrounding this case and related civil and criminal lawsuits involving the Iberia Parish Sheriff's Office. At a status conference on July 28, 2016, Magistrate Judge Hanna specifically acknowledged that "various forms of media are watching this record very closely."[11] Many of the published articles have been attached to this ruling. The publicity began prior to the defendants' indictment and has continued throughout the life of this case, with local news outlets closely following every public event in this and related dockets. Not only does the publicity directly reference the three defendants herein, but it also evinces the pervasive nature of the underlying

---

[11] *See* Doc. #73 (sealed), p. 15, ll 6-11.

allegations. The various articles include references to the above-noted nine guilty pleas, as well as related civil cases currently pending in the Western District of Louisiana, involving alleged rights violations by employees, or former employees, of the Iberia Parish Sheriff's Office. Defendant Ackal (01) is individually named in many of those civil lawsuits, and his criminal defense attorney has indicated that this criminal case will impede discovery in the civil lawsuits and prevent Sheriff Ackal from sitting for any depositions.[12] Some facts underlying those cases are especially relevant herein, as they are the subject of Rule 404(b) notices issued by the Government in this case.[13] Furthermore, the discriminatory nature of the publicity extends to anti-semitic comments and threats, made by Defendant Ackal (01) and directed toward one of the Government attorneys in this case.[14]

This Court is not only troubled by the extent of the pretrial publicity surrounding these and related allegations, but it is also very concerned with the serious nature of the allegations, and the fact that they have been made against an elected public official and his employees. Although the charges are mere allegations, they nonetheless serve to undermine the community's faith in its elected officials. Iberia Parish is under extreme economic and financial stress, due at least in part to these and related allegations involving the Iberia Parish Sheriff's Office.[15] In

---

[12] *See id.*, p. 9, ll 6-13.

[13] Notice was given via emails to the defense attorneys and to the Court on August 25, 2016.

[14] The substance of those anti-semitic comments and threats, or at least a portion thereof, was included in the Government's motion to modify the conditions of Defendant Ackal's (01) pretrial release. *See* Doc. # 60, pp. 2-3.

[15] *See* attachment, August 30, 2016, The Daily Iberian, http://www.iberianet.com/news/ipso-in-financial-straits/article_5ccba47e-6e59-11e6-9539-d72b0f136fa2.html (Discussing Iberia Parish budgetary concerns, noting: "Ackal said the exposure, or deductible, for his office has been raised from $50,000 per incident to $250,000. Overall, he said the office is facing a $1.3 million shortfall if changes are not made.").

contrast to the *Parker* case, in which the Fifth Circuit upheld the denial of a defendant's pretrial-publicity-based interdistrict motion to transfer, the publicity in this case is both inflammatory and of a nature that would influence a juror's decision. *See Parker*, 877 F.2d at 331. This finding results from the nature of the allegations, the positions of public trust occupied by the defendants, and the size of the affected community, as well as its relative proximity and overlap with the Lafayette Division of the Western District of Louisiana.

Potential jurors in the Lafayette Division are pulled from the following parishes: St. Martin, Acadia, Evangeline, Iberia, Lafayette, St. Mary, St. Landry, and Vermilion.[16] According to the October 2015 master jury report, Iberia Parish[17] had a total of 46,977 registered voters and accounted for 11.191% of the potential jurors serving the Lafayette Division.[18] It is the third largest single-parish representative in the Lafayette Division's jury pool. The largest, Lafayette Parish, had a total of 147,070 registered voters and accounted for 35.035% of the Division's jury pool. For the major publications closely following this and related cases, Lafayette and Iberia Parishes account for a significant portion of circulation and readership. For instance, both The Acadiana Advocate and The Daily Advertiser are based in Lafayette, and average circulation in 2015, for the Daily Advertiser alone, was well over 20,000. Likewise, KLFY.com reports that,

---

[16] Louisiana's Sixteenth Judicial District, is comprised of the parishes of Iberia, St. Mary and St. Martin. The 2010 census reported a population of 180,050. *See* http://www.16jdc.org/ (last visited September 14, 2016).

[17] According to the 2010 national census, the population of Iberia Parish was 73,240, and as of July 1, 2015, it was estimated to have risen to 74,103. Likewise, the parish has a total area of just over 1,000 square miles, approximately half of which is land versus water. *See* United States Census Bureau, Quick Facts, http://www.census.gov/quickfacts/table/PST045215/22045,00 (last visited August 25, 2016). As such, it is a relatively small community, certainly not in the same category as the Dallas metropolitan area, at issue in both *Lipscomb* and *Faulkner*.

[18] A copy of this two-page report is attached.

12

for the month of February 2016, its news section had 2.352 million total page views, and The Daily Iberian, through iberianet.com reaches over 65,000 people, on a monthly basis. Thus, in this case, relevant publicity has attracted a significant amount of community attention, particularly when taking into consideration the relative size of the communities from which juries are drawn in the Lafayette Division.

Additionally, in this Court's considered opinion, based on 31 years' experience on the bench, selecting a jury in Lafayette would require upwards of 100 potential jurors in the general venire – not to mention the associated cost and citizenry considerations. On the other hand, there has been no notable trial-related publicity surrounding the Shreveport area, such that impaneling a jury in Shreveport might well require a mere 40 potential jurors, for whom pretrial publicity and related prejudicial concerns would be of no moment.

As the Supreme Court has explained:

> Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. . . . [W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity.

*Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966). Because the public has such a strong interest in resolving this matter as expeditiously as possible, the Court is reluctant to "continue the case until the threat abates." *Id.* In an effort to insulate this trial from publicity which has saturated the community surrounding the Lafayette division, the Shreveport transfer appears to be the best means of escaping the threat of prejudice from pretrial publicity. With due regard for, and upon due consideration of, the relevant factors, this Court finds that a Shreveport trial setting, on October 31, 2016, best effectuates the prompt administration of justice in this case.

For the foregoing reasons, Defendant Savoy's (02) motion to adopt [Doc. # 85] is hereby **GRANTED**; Defendant Frederick's (03) motion to continue trial [Doc. #78] is hereby **DENIED**; and the motions to change venue [Docs. ## 64, 77], filed by Defendants Ackal (01) and Frederick (03), are hereby **DENIED**. Furthermore, as was made clear herein, maintaining the current trial date of October 31, 2016 is of utmost importance to the Court, as it is in the best interest of the public. Therefore,

**IT IS FURTHER ORDERED** that any party wishing to challenge this order, by any legal means available, must do so **by close of business on Friday, September 23, 2016.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 14th day of September, 2016.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE